## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEAN CALAMAN,                    :     1:16-cv-116
                                 :
            Plaintiff,           :     Hon. John E. Jones III
                                 :
      v.                         :
                                 :
CARLISLE HMA, LLC, D/B/A         :
CARLISLE REGIONAL MEDICAL        :
CENTER,                          :
                                 :
            Defendant,           :

## MEMORANDUM

### March 24, 2017

Presently pending before the Court is Defendant's motion for summary judgment. (the "Motion") (Doc. 34). Plaintiff Jean Calaman brings two counts against her former employer, Defendant Carlisle Regional Medical Center, alleging violations of the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). (Doc. 12). The Motion has been fully briefed (Docs. 36, 40, 41) and is therefore ripe for our review. For the reasons that follow, the Motion shall be granted and the case closed.

## I.    BACKGROUND

Plaintiff Jean Calaman ("Plaintiff") began her employment with Defendant Carlisle Regional Medical Center (the "Hospital") in 1979. (Doc. 35, ¶ 1). Plaintiff

started work as a Radiology Nurse in the Interventional Radiology Department (the "IR Department") in 1989. (*Id*., at ¶ 2). Her responsibilities included "scheduling patients, communicating with physicians' offices regarding procedures, assessing patients, educating them regarding procedures, and pre- and post-sedation care of the patient." (*Id*., at ¶ 3). Radiology Nurses are expected to be on their feet a majority of the time and not just to stand and walk, but to actually bear weight. (*Id*., at ¶ 4).

At all relevant times, Jennifer Dorrough was the Director of Imaging Services and Pain Management and had ultimate supervisory responsibility over the employees in the IR Department. (*Id*., at ¶ 14). Before taking leave, the other full time Radiology Nurse in the IR Department was Tracy Van Pelt. (*Id*., at ¶ 12). In a December 17, 2012 performance evaluation, the IR Department Supervisor rated Plaintiff as "often falls below performance expectations, needs improvement" in the category of "Promotes teamwork and open communication." (*Id*., at ¶ 19). The evaluation also stated, "need to work on communication w/ Tracy & myself. We need to be able to move forward w/ schedule planning between you and Tracy . . ." (*Id*., at ¶ 20). In a December 20, 2013 performance evaluation, the IR Department Supervisor again rated Plaintiff as "often falls below performance expectations, needs improvement" in the category of "Promotes teamwork and open communication." (*Id*., at ¶ 22). The evaluation also stated "We need to work

on communication – I think most of our issues can be put to rest w/ open dialogue between us all." (*Id.*, at ¶ 23). Plaintiff testified that she is "stubborn and . . . that doesn't always meet well with my co-workers." (*Id.*, at ¶ 17).

Beginning in 2014, Plaintiff had trouble walking, pushing beds and standing for extended periods of time. (*Id.*, at ¶ 30). She did not ask for any changes in her duties as a Radiology Nurse. (*Id.*, at ¶¶ 31, 32). In June 2014, Plaintiff told Dorrough that she was going to have surgery on her foot. (*Id.*, at ¶ 33). Plaintiff completed FMLA leave paperwork and it was approved by Dorrough and Tenna Synder, the Hospital's Benefits Manager. (*Id.*, at ¶ 35). Plaintiff's last day of work in the IR Department was July 2, 2014. (*Id.*, at ¶ 39). She anticipated a four week leave of absence, but this was ultimately her last day of work as a Radiology Nurse in the IR Department. (*Id.*, at ¶¶ 38, 39).

While the IR Department was staffed with part time nurses during her leave, Plaintiff recognized that her absence would place stress on Van Pelt as "the only full-time, permanently assigned Radiology Nurse." (*Id.*, at ¶ 42). In August 2014, while Plaintiff was on FMLA leave, Dorrough contacted Plaintiff by phone and asked whether she could return to work for light duty to alleviate hardship on her coworkers. (*Id.*, at ¶ 43). Plaintiff declined to return to work, and informed Snyder of Dorrough's phone call. (Doc. 40, att. 1, ¶ 43).

Plaintiff exhausted her twelve weeks of FMLA leave on September 25, 2014, but was physically unable to return to her original work position at that time. (Doc. 35, ¶¶ 48, 49). Following her twelve week FMLA leave, Plaintiff informed the Hospital that she required additional leave to have surgery on her other foot. (*Id.*, at ¶ 50). The Hospital told Plaintiff that her position would not be held beyond her twelve week FMLA leave. (Doc. 40, att. 1, ¶ 51). The Hospital's Employee Handbook provides that an employee can request Personal or General Medical Leave beyond her FMLA leave, but provides that an associate may not take more than 26 weeks of combined leave in a single year. (Doc. 35, ¶¶ 54, 55). The Handbook further provides that the associate does "not have any automatic right to return to their previous positions, to equivalent positions, or to any position within the hospital." (*Id.*, at ¶ 56).

On September 25, 2014, Snyder wrote to Plaintiff to provide her with a Personal/ Medical Leave application and inform her that her FMLA leave ended on September 25, 2014; the letter stated: "we cannot guarantee you a position if or when you are able to return to work." (*Id.*, at ¶ 60). Plaintiff checked a box on her Personal/Medical Leave application indicating she was seeking "Extension (no guarantee of reinstatement)." (*Id.*, at ¶ 61). Plaintiff completed this form and it was approved by Dorrough on October 9, 2014. (*Id.*, at ¶ 62). She completed a similar form that was approved by Snyder on October 1, 2014. (*Id.*, at ¶ 64). Plaintiff

acknowledged on this form that she "underst[oo]d that if granted an approved leave of absence, the facility cannot guarantee [her] position upon return to work." (*Id.*, at ¶ 63).

The Hospital provided Plaintiff with a status form for her General Medical Leave on October 17, 2014. (*Id.*, at ¶ 75). The form stated: "It is important to note that your right to return to your previous position, to an equivalent or any position within the hospital shall not be guaranteed during the Personal/Medical Leave." (*Id.*). Plaintiff requested leave from October 24, 2014 to November 23, 2014, again acknowledging that her position was not guaranteed upon return to work. (*Id.*, at ¶ 76). Plaintiff was again provided with a status form on November 18, 2014, containing the same notice that her position would not be guaranteed. (*Id.*, at ¶ 77). Plaintiff ultimately requested and was granted three four-week medical leaves of absence following her twelve-week FMLA leave. (*Id.*, at ¶ 79).

The Hospital received approval to fill Plaintiff's Radiology Nurse position in the IR Department on October 29, 2014. (*Id.*, at ¶ 68). Plaintiff testified that she understood the Hospital's need for a second full-time IR nurse in the department. (Doc. 35, ex. A, 194:19-23). The position was filled by Scott Aldrich, a nurse working in another unit who had worked *per diem* in the IR Department during Plaintiff's leave. (*Id.*, at ¶ 69). Aldrich submitted a transfer request on November 4,

2014 and began work as a full-time Radiology Nurse in the IR Department on December 8, 2014. (*Id.*, at ¶¶ 72, 73).

During her second four-week leave, in November 2014, Plaintiff reviewed job postings at the hospital and spoke with Susan Stuckey, Director of the Outpatient Surgery Center, regarding an open position as a part-time perianesthesia nurse. (*Id.*). Stuckey interviewed Plaintiff on November 12, 2014 at the request of Human Resources. (*Id.* at ¶ 83). Plaintiff testified about her interview with Stuckey: "she was concerned that I'd be able – that [the job] required you to be on your feet all day long and she didn't know if I could do that." (Doc. 35, ex. A, 214:16-215:1). At the time of her interview, Plaintiff was still on medical leave and was not capable of performing the perianesthesia nurse position. (Doc. 35, ¶ 87).

Plaintiff was not brought back for a second interview. (Doc. 25, ¶ 92). Stuckey testified that this decision was based on a conversation with Tracey Nicholson, who told Stuckey that Plaintiff was not a team player and would not be a good fit for the position. (Doc. 35, ex. W, 26:14-27:6). Stuckey further testified that this conversation with Nicholson was the *only* reason that she decided not to bring Plaintiff back for another interview. (*Id.*). Plaintiff disputes this decision making process and alleges that Stuckey did not bring her back for an interview due to her medical condition. (Doc. 40, att. 1, ¶ 93). However, Plaintiff testified that she did not know how the decision was made or why she did not receive a

second interview. (Doc. 35, ¶ 94). At some point during this process, Dorrough

spoke with Stuckey and told her that she would not re-hire Plaintiff because she

"created a lot of tension in our department." (Doc. 35, ex. B, 75:6-76:1).

Plaintiff discussed other positions at the Hospital with human resources and

the Chief Nursing Officer, Ann Spade, but did not interview or submit an

application for any other position prior to the expiration of her medical leave on

December 29, 2014. (Doc. 35, ¶ 98). Plaintiff submitted a return to work release on

or about December 29, 2014 when her leave expired. (*Id.*, at ¶ 99). On or about

January 6, 2015, the Hospital corresponded with Plaintiff stating:

> We regret to inform you that your employment as a Registered Nurse
> with Carlisle Regional Medical Center  has ended effective December
> 30, 2014.
>
> As you are aware, you have exhausted all FMLA time and additional
> medical leave, a total of six months.  Your  job protection status ended
> at the end of the FMLA  phase.  Although you were released to return
> to work effective December 29, 2014, no applicable position is
> available at this time based on your skill set.
>
> You are welcome to continue to review job openings at  the facility.  If
> you have an interest in applicable openings, please complete the on-
> line application . . . .

(*Id.*, at ¶ 100).

In December 2014, Plaintiff met with Spade to discuss her job search within

the Hospital. (*Id.*, at ¶ 103). Spade informed Plaintiff of an open nurse position in

the Hospital's Wound Clinic. (*Id.*). Plaintiff applied on January 2, 2015, but was

not selected for the position. (*Id.*, at ¶¶ 104, 107). The Hospital does not have any

record of anyone being hired to fill that position. (*Id.*, at ¶ 109). An identical position was posted on March 27, 2015 and subsequently filled, but Plaintiff did not submit an application for this posting. (*Id.*, at ¶¶ 110-112). During their December 2014 conversation, Spade also informed Plaintiff of an opening in the Hospital's Medical-Surgical Unit, but Plaintiff was uninterested and did not apply. (*Id.*, at ¶ 113-115).

Dorrough posted an open position for the Hospital's Pain Clinic on January 27, 2015, for which Plaintiff submitted an application in February 2015. (*Id.*, at ¶¶ 118, 121). Dorrough hired someone other than Plaintiff to fill this position. (*Id.*, at ¶ 125). Plaintiff again applied for a position in the Pain Clinic in July 2015, but Dorrough filled this position without knowledge of Plaintiff's application. (*Id.*, at ¶¶ 126-129). Finally, Plaintiff again applied for a position in the Pain Clinic in December 2015, but Hospital records do not indicate that there was an open position in the clinic at that time. (*Id.*, at ¶ 131).

Plaintiff filed an amended complaint on March 18, 2016, bringing two counts against the Hospital for violations of the ADA and FMLA.[1] (Doc. 12). The Hospital filed this Motion for summary judgment on November 1, 2016. (Doc. 34).

---

[1] Plaintiff indicated in her amended complaint that she intended to move to amend to include claims under the Pennsylvania Human Relations Act ("PHRA") once she had exhausted her administrative remedies. (Doc. 12, ¶ 1). Plaintiff has not done so. However, Plaintiff recognizes that claims under PHRA are analyzed identically to claims under the ADA, and as such, any potential PHRA claim is disposed of along with Plaintiff's ADA claim. (Doc. 40, p. 7); *Reilly v. Lehigh Valley Hosp.*, 519 F. App'x 759, 763 (3d Cir. 2013).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law.  *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A court should view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences therefrom, and should not evaluate credibility or weigh the evidence.  *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial.  *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  In advancing their positions, the parties must support their factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or

that an adverse party cannot produce admissible evidence to support the fact."

FED. R. Civ. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

## III.   DISCUSSION

Plaintiff brings two counts against the Hospital- violations of the ADA and of the FMLA. (Doc. 12). The Hospital moves for summary judgment on each count, arguing that Plaintiff cannot establish a violation of either Act. We will discuss each in turn.

### A. Americans with Disabilities Act

The ADA provides: "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of

employment." 42 U.S.C. § 12112(a). Plaintiff alleges three theories of liability under the ADA: (1) discrimination by terminating and failing to rehire her; (2) retaliation by terminating and filing to rehire her; and (3) failure to accommodate. (Doc. 12, ¶¶ 30-32). Because the Hospital argues for summary judgment on Plaintiff's discrimination and retaliation claims for the same reason, we will discuss those together and then move on to address Plaintiff's failure to accommodate claim.

### 1.  Discrimination and Retaliation

"In order to establish a prima facie case of disparate treatment under the ADA, a plaintiff must show '(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination.'" *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000) (quoting *Gaul v. Lucent Techs., Inc*., 134 F.3d 576, 580 (3d Cir. 1998)). Similarly, "[t]o establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co*., 126 F.3d 494, 500 (3d Cir. 1997). Once a

plaintiff establishes a prima facie case, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reason" for the alleged discrimination or retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

"Finally, if the defendant manages to rebut the plaintiff's prima facie case, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were merely a pretext for discrimination." *Phillips v. Ctr. for Vision Loss*, 2017 WL 839465, at *7 (M.D. Pa. Mar. 3, 2017).

The Hospital argues that Plaintiff cannot establish a prima facie case of discrimination or retaliation because, even if all the other elements are met, she cannot establish that her termination or the Hospital's failure to rehire her was due to her disability or in retaliation for her request for FMLA leave. (Doc. 36, pp. 9, 14).

Plaintiff points to the following list of evidence, without citing to the record, in support of her theory that she was terminated and not rehired due to her disability:

- Dorrough called Plaintiff during her FMLA leave to ask if she could come back for light duty because her leave caused hardship on her coworkers.
- Plaintiff was terminated shortly after disclosing her medical condition.
- Plaintiff was "falsely informed that her position in the IR department was filled as of October 2014, when, in fact, it was not filled until December 8, 2014."

- Dorrough "specifically told Ms. Stuckey that she would not re-hire [Plaintiff] despite that [Plaintiff] had never been issued any discipline for any reason by Ms. Dorrough and Ms. Dorrough had never even spoken with [Plaintiff] about any performance or behavioral issues."
- Dorrough "rushed to replace [Plaintiff] despite that there was no need to do so."
- Stuckey expressed concern that Plaintiff would not be able to perform the perianesthesia nurse position during her interview in November 2014

(Doc. 40, pp. 9, 10). We consider each piece of evidence offered by Plaintiff.

The evidence indicates that Plaintiff informed the Hospital of her medical condition in June 2014 and was not terminated until exhausting her 12 weeks of FMLA leave and 12 weeks of general medical leave on December 30, 2014. (Doc. 35, ¶¶ 33, 100). Therefore, Plaintiff's allegation that she was terminated shortly after disclosing her disability is factually incorrect. Plaintiff's allegation that Dorrough "rushed" to replace her despite there not being a need to do so is contradicted by the evidence as well; the earliest that Plaintiff could allege that she was replaced was when Dorrough sought approval to fill Plaintiff's position on October 6, 2014.[2] (Doc. 40, ¶ 67). Authority was granted to fill Plaintiff's position on October 29, 2014. (Doc. 35, ¶ 68). Plaintiff's leave began on July 3, 2014, and she requested additional time off after she exhausted her twelve weeks of FMLA leave. (*Id*., at ¶¶ 39, 79). Further, Plaintiff herself testified that the department

---

[2] The parties dispute who requested approval to fill Plaintiff's position; the Hospital maintains that it was Leslie Shatto, Director of Human Resources, while Plaintiff alleges that it was Dorrough. (Doc. 40, att. 1, ¶ 67). Because this distinction is immaterial, for purposes of this Motion we accept Plaintiff's allegation.

requires two nurses to operate at peak efficiency and that she understood the Hospital's need for a second full-time nurse. (Doc. 37, ex. A, 110:6-9, 194:19-23).

Finally, it is unclear how causation is supported by Plaintiff's allegation that the Hospital told her that her position was filled in October when it was not filled until December. Not only does Plaintiff not provide the Court with a citation to view this evidence in the record, but the record makes clear that the Hospital received approval to fill her position in October 2014, which could have been the basis for the representation that her position was filled. (Doc. 35, ¶ 68). Again, it is unclear how this supports a theory of discrimination or retaliation.

Plaintiff is left with three pieces of evidence to establish that she was terminated and not re-hired due to her disability: Dorrough's phone call to Plaintiff during her FMLA leave, Dorrough's comment to Stuckey that she would not rehire Plaintiff, and Stuckey's expressed concern with Plaintiff's ability to perform the perianesthesia nurse position. Only Stuckey's comment concerns Plaintiff's medical condition and Plaintiff admitted that she could not perform the nurse position at the time of the interview. (*Id.*, at ¶ 87). However, the Court can assume *arguendo* that these three pieces of evidence establish causation such that Plaintiff has put forth a prima facie case under the ADA, because Plaintiff cannot establish that the Hospital's legitimate reasons for its actions are pretextual.

The Hospital maintains that Plaintiff was terminated in accordance with the Hospital's general medical leave policy after she failed to return to any position by the end of her 90 day leave, following her 12 week FMLA leave. (Doc. 36, p. 21). This action was automatic and it was not pursuant to any "decision" on part of the Hospital. (*Id*). Plaintiff was made aware on many occasions that the Hospital was not obligated to hold her Radiology Nurse position open during her leave, and because she did not find an alternative position during her leave period, her employment ended automatically at the end of her leave. (*Id*.). The Hospital has offered a non-discriminatory reason for filling her position as well- the IR Department had a need for two full-time Radiology Nurses. (*Id*., at p. 11).

The Hospital has similarly offered non-discriminatory reasons for not re-hiring her. Plaintiff applied for four open positions. First, Plaintiff was not hired for the perianesthesia nurse position. Stuckey testified that she did not bring Plaintiff back for an interview because she spoke to a woman who said that Plaintiff was not a team player.  (Doc. 35, ex. W, 26:14-27:6). Second, Plaintiff applied for a position in the Wound Clinic, but the Hospital has no record of anybody being hired for this position. (Doc. 35, ¶ 109). The Hospital's offered reason for not hiring Plaintiff is that it abandoned its search for a candidate to fill this position. (Doc. 36, p. 23). Third and fourth, Plaintiff was not hired for a position in the Wound Clinic that she applied for in February and July 2015. (Doc.

35, ¶¶ 118, 120, 126, 128). Dorrough made the decision to hire other candidates to fill these two positions. (*Id.*, at ¶¶120, 128). The Hospital offers two reasons for Dorrough's decision to not hire Plaintiff: first, Dorrough was not aware of Plaintiff's application for one of the two positions, and second, Dorrough had previously stated that she would not rehire Plaintiff because she caused a lot of tension in the department and lacked teamwork and communication skills. (*Id.*, at ¶¶ 122, 123). It is worthy to note that teamwork and communication problems with Plaintiff were documented on performance evaluations that predated the disclosure of her disability and intent to take leave. (Doc. 35, ¶¶ 19, 20, 22, 23).

In the face of legitimate, non-discriminatory reasons for the defendant's actions, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action." *Id*. The "plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Id*., at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 523 (3d Cir. 1992)). To be sure, "this standard places a difficult burden on the plaintiff." *Id*.

In an attempt to show pretext, Plaintiff offers a list of evidence that includes her prior list of evidence purporting to show causation, plus the following:

- "Dorrough refused to offer [Plaintiff] light duty work at the conclusion of her medical leave, despite that there was on ongoing need for an employee to perform the job."
- "Dorrough replaced [Plaintiff's] position on December 8, 2014, despite being informed prior to that date that [Plaintiff] would be returning to work by December 29, 2014."
- "Stuckey told [Plaintiff] that she did not believe she could perform the RN surgery center position because of her medical condition."
- "Stuckey falsely claimed that [Plaintiff] wore a dirty t-shirt and slacks to the interview."
- Plaintiff "was not hired for the RN surgery center position despite that she was qualified for it and worked for the Defendant much longer than the candidate ultimately selected for the position."

(Doc. 40, pp. 13-14). As a threshold matter, Plaintiff has not offered any evidence to rebut or to show that the Hospital's purported reason for her termination - that the termination was automatic pursuant to Hospital policy - was pretextual. Thus, her ADA claims based upon her termination must fail and we will examine her pretext arguments in light of her failure to rehire claim.

Starting with the first assertion, Plaintiff was informed on multiple occasions and signed paperwork indicating her understanding that she was *not entitled* to any position at the hospital following her medical leave. (Doc. 35, ¶¶ 51, 52, 56, 60-65, 75-78). It is unclear, therefore, how Dorrough's failure to offer Plaintiff light duty work would add in any way to an argument that the Hospital's non-discriminatory reasons are pretextual. Next, even if we accept Plaintiff's allegation that Dorrough knew Plaintiff was returning on December 29, 2014 and hired a replacement on December 8, 2014, it is again unclear how it would support pretext considering the Hospital's position that they were in need of another full time Radiology Nurse.

Third, Plaintiff exaggerates her own testimony regarding Stuckey's statement during her interview: according to Plaintiff, "she was concerned that I'd be able – that [the job] required you to be on your feet all day long and she didn't know if I could do that." (Doc. 35, ex. A, 214:16-215:1). This concern is relevant to Plaintiff's argument that Stuckey's stated reason for not hiring her for the perianesthesia nurse position was pretext; however, Plaintiff's only other argument is that Stuckey "falsely claimed" that she wore a dirty shirt and slacks to the interview. (Doc. 40, p. 14). These two allegations certainly do not "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Stuckey's non-discriminatory reason for not hiring Plaintiff for

the perianesthesia nurse position such that a reasonable fact-finder would determine that it was pretextual. *Fuentes*, 32 F.3d at 765.

Finally, Plaintiff's allegation that she was qualified for the nurse positions and more experienced than the candidate ultimately selected for the positions certainly aids her argument that the Hospital's reasons not hiring her were pretextual. However, it is not enough to allow a reasonable fact-finder to discredit the Hospital's non-discriminatory reasons. Considering all of the evidence presented by Plaintiff, and even giving her the benefit of assuming she has presented a prima facie case of discrimination, she cannot overcome her "difficult burden" of presenting sufficient evidence for the jury to find that the Hospital's reasons for not hiring her were pretextual. Thus, Plaintiff's ADA claim based on the Hospital failing to rehire her due to her disability must fail.

The same *McDonnell Douglas* burden-shifting framework applies to Plaintiff's retaliation claim. *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000). Plaintiff argues that the Hospital terminated and did not re-hire her in retaliation for taking FMLA and general medical leave. (Doc. 40, p. 16). She uses the same evidence to attempt to support this claim as she did for her general ADA discrimination claim; in fact, she cites to much less of this evidence in her argument to support retaliation. We can again assume that she has made out a

prima facie case of retaliation, because, for the same reasons discussed above, she

cannot prove pretext. Thus, Plaintiff's retaliation claim must fail as well.

### 2.  Failure to Accommodate

Plaintiff alleges that the Hospital "failed to accommodate Plaintiff's health

conditions by failing to engage in the interactive process to determine whether they

could hold her position open for a brief period of time after her FMLA expired and

by actually failing to hold Plaintiff's position open for a brief period of time after

her FMLA expired." (Doc. 12, ¶ 32). Plaintiff argues that the Hospital violated the

ADA through failure to accommodate when it filled her Radiology Nurse position

on December 8, 2014 instead of keeping it open until December 29, 2014 when her

leave expired. (Doc. 40, 22).

It is axiomatic that in order to prevail on a failure to accommodate theory of

liability, the Plaintiff must have actually requested an accommodation.

Specifically, a plaintiff must establish four elements: "1) [s]he was disabled and

h[er] employer knew it; (2) [s]he requested an accommodation or assistance; (3)

h[er] employer did not make a good faith effort to assist; and (4) [s]he could have

been reasonably accommodated. *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438

F.3d 240, 246 (3d Cir. 2006).

Plaintiff has not pointed to any evidence that she asked for an

accommodation. Indeed, she admitted that she never asked for any changes in the

way she performed her duties as a Radiology Nurse. (Doc. 35, ¶¶ 31-32). Her claim is based upon the Hospital making "no effort to discuss with her the possibility/ability to hold her position open for her until her return," but cites to no evidence that she attempted to have this discussion with the Hospital. (Doc. 40, p. 22). Plaintiff alleges that the Hospital should have kept her position open as she sought repeated 30-day medical leaves of absence, despite being made aware and indicating her understanding that her position was not guaranteed during her leave.

Because she has no evidence that she requested any accommodation, Plaintiff's ADA failure to accommodate claim fails.

## B. Family Medical Leave Act

Plaintiff brings both interference and retaliation claims against the Hospital under the FMLA.

Beginning with her retaliation claim, Plaintiff argues that the Hospital terminated her and failed to re-hire her in retaliation for requesting and exercising her FMLA rights and to prevent her from taking further FMLA leave. (Doc. 12, ¶ 40). As a threshold matter, the Court notes that Plaintiff did, in fact, take all twelve weeks of FMLA leave available to her. (Doc. 35, ¶ 48). "To prevail on a retaliation claim under the FMLA, the plaintiff must prove  that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v.*

*Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012). Retaliation

claims under the FMLA are analyzed under the same *McDonnell Douglas* burden-

shifting framework as claims under the ADA. *Id.*, at 302. Thus, for the same

reasons discussed extensively in the previous section, even if Plaintiff could

establish a prima facie case of retaliation under the FMLA, her claim must fail

because she cannot show pretext.

Next, to establish a claim of interference under the FMLA, Plaintiff must

show: "(1) he or she was an eligible employee under the FMLA; (2) the defendant

was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled

to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention

to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she

was entitled under the FMLA." *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir.

2014).

The Hospital concedes that the first four elements are met. (Doc. 36, p. 6).

However, the Hospital argues that Plaintiff's FMLA interference claim must fail

because there is no dispute that Plaintiff received a full 12 weeks of FMLA leave.

(*Id.*). Plaintiff recognizes this, but argues that "Dorrough's conduct of contacting

[Plaintiff] while she was on an approved FMLA leave and telling her that her leave

was causing undue hardship on the department chilled [Plaintiff's] desire to take

FMLA leave, despite that she ultimately took the leave." (Doc. 40, p. 24).

22

Plaintiff cites *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005) for the proposition that "it is not necessary that the employer actually deny FMLA leave" to establish an actionable interference claim. (Doc. 40, p. 24). There, the Third Circuit reiterated that the "FMLA is meant to prohibit employers from retaliating against employees who exercise their rights, refusing to authorize leave, manipulating positions to avoid application of the Act, or discriminatorily applying policies to discourage employees from taking leave." *Callison*, 430 F.3d at 120. Plaintiff is certainly correct that an FMLA interference claim can be premised upon abuses of FMLA rights outside of the outright denial of FMLA leave. *See Grosso v. Fed. Exp. Corp.*, 467 F. Supp. 2d 449, 464 (E.D. Pa. 2006).

However, the only evidence that Plaintiff offers to establish interference is one phone call from Dorrough during her FMLA leave asking Plaintiff to return to work for light duty to "to make it easier for Tracey", the other Radiology Nurse. (Doc. 37, ex. A, 166:14). Plaintiff does not point the Court to any record evidence that this phone call discouraged her from remaining on FMLA leave or otherwise "chilled" her desire to continue to exercise her FMLA rights. *See Shtab v. Greate Bay Hotel & Casino, Inc.*, 173 F. Supp. 2d 255, 268 (D.N.J. 2001). In the face of this paucity of evidence, no reasonable jury could find that the Hospital interfered with Plaintiff's FMLA rights, and as such, we shall grant summary judgment in the Hospital's favor.

**IV.    CONCLUSION**

For the foregoing reasons, we shall grant Defendant's Motion for Summary

Judgment. (Doc. 34). A separate order shall issue in accordance with this ruling.